UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CISNEROS-BELLO,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:15-cv-01698 – JLT<br><br>ORDER DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MARIA CISNEROS-BELLO AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

        Maria Cisneros-Bello asserts she is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating illiteracy as a vocational factor, and seeks review of the decision to deny her applications for benefits. For the reasons set forth below, the Commissioner's motion for summary judgment is **DENIED** and the ALJ's decision is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**<u>PROCEDURAL HISTORY</u>**

        Plaintiff filed her applications for benefits on August 6, 2012, alleging disability beginning on April 5, 2010. (Doc. 9-3 at 15) The Social Security Administration denied Plaintiff's applications at

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as the defendant.

1

both the initial level and upon reconsideration.  (*See generally* Doc. 9-4)  Plaintiff testified at hearings before an ALJ on October 31, 2013, and March 18, 2014.  (Doc. 9-3 at 15)  The ALJ determined she was not disabled and issued an order denying benefits on April 25, 2014.  (*Id.* at 15-27)  When the Appeals Council denied Plaintiff's request for review of the decision on September 15, 2015 (*id.* at 2-4), the ALJ's findings became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of April 5, 2010.  (Doc. 9-3 at 17)  At step two, the ALJ found Plaintiff's severe impairments included: "degenerative disc disease (DDD), bilateral carpal tunnel syndrome (CTS), myofacial pain syndrome (MPS), affective disorder and anxiety disorder."  (*Id.*)  At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing.  (*Id.* at 18)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: [she] can lift and carry occasionally 20 pounds and frequently 10 pounds; stand or walk 2 hours of an 8-hour workday with the understanding you can stand or walk no more than 30 minutes continuously; no restrictions in sitting; never climb ladders, ropes, or scaffolding; occasionally climb stairs, balance, stoop, crawl, crouch, or kneel; no exposure to unprotected height; avoid concentrated exposure to extremes of heat, cold, or vibrations; can perform no more than occasionally complex tasks; can constantly perform simple repetitive tasks; no employments were the job duties shall require life or death decisions; and no employments involving confrontational situations such as security work.

(*Id.* at 19)  In addition, the ALJ found Plaintiff was "not able to communicate in English, and [was] considered in the same way as an individual who is illiterate in English."  (*Id.* at 25)  With these factors in mind, the ALJ concluded Plaintiff was "unable to perform any past relevant work."  (*Id.*)  However,

the ALJ determined Plaintiff was able to perform other "jobs that exist in significant numbers in the national economy," such as small product assembler I, DOT 706.684-022, and final inspector, DOT 727.687-054. (*Id.* at 25-26) Consequently, the ALJ found Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 22)

## DISCUSSION AND ANALYSIS

Plaintiff's sole argument on appeal is that the ALJ erred at step-five of the sequential evaluation in finding that she is able to perform work as a small product assembler and final inspector. (Doc. 18 at 5-12) According to Plaintiff, the ALJ failed to address conflicts between the testimony of the vocational expert—who opined Plaintiff could work with the residual functional capacity identified by the ALJ— and the language requirements of these jobs as defined by the *Dictionary of Occupational Titles*. (*See id.*)

### A.   Step Five of the Sequential Evaluation

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles*, which classifies jobs by their exertional and skill requirements, and is published by the United States Department of Labor, Employment & Training Administration. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 404.1566(d)(1). In the alternative, the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

The ALJ called a vocational expert ("VE") "[t]o determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base." (Doc. 9-3 at 26) Specifically, the ALJ asked the VE to consider a hypothetical individual, with the physical limitations identified in the residual

functional capacity for Plaintiff, and who had "no formal education" and "speaks Spanish only." (*Id.* at 65-66) The VE responded the hypothetical person could work as a small products assembler I, DOT 706.684-022; final inspector, DOT 727.687-054; and blueprint trimmer, DOT 920.687-038. (*Id.* at 67-68) The ALJ then asked the VE: "wouldn't you have to have some ability to read English in order to trim the blueprints?" (*Id.* at 68) Responding in the affirmative, the VE responded that he would "eliminate that" position. (*Id.*)

The VE did not state this testimony conflicted with the *Dictionary of Occupational Titles*, and Plaintiff's counsel did not question the VE regarding any conflicts between his testimony and the *Dictionary of Occupational Titles*. (*See* Doc. 9-3 at 64-72)

**B.     Conflicts with the *Dictionary of Occupational Titles***

Pursuant to SSR 00-4p[2], occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit has determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

---

[2] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

### 1.   Waiver

As an initial matter, Defendant argues Plaintiff has waived the right to appeal the step-five conclusion because "Plaintiff's counsel at the hearing did not object to the VE's testimony about Plaintiff's capacity to perform the jobs the ALJ identified at step five." (Doc. 21 at 6)  Defendant argues, "Plaintiff's counsel never questioned the VE specifically about the alleged conflict between the job descriptions in the DOT and Plaintiff's inability to read English, and did not prod the ALJ to do so, either." (*Id.* at 7)  Accordingly, Defendant contends Plaintiff has waived her right challenge the ALJ's step five findings.

However, this Court determined that "the fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument."  *Gonzalez v. Astrue*, 2012 WL 2064947 at *4 (E.D. Cal. June 7, 2012).  The Court explained that "while it was unfortunate that the claimant's representative did not challenge [an] apparent conflict between the VE's testimony and the DOT at the hearing so that it could have been addressed by the ALJ, the Supreme Court has nonetheless held 'that a plaintiff challenging a denial of benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates.'" *Id.*, quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (citing *Sims v. Apfel*, 530 U.S. 103 (2000)).

Furthermore, it is the ALJ who bears a burden to inquire whether the vocational expert's testimony conflicts with the *Dictionary of Occupational Titles*.  *See* SSR 00-4p; *see also Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996) (an ALJ has the duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel).  Thus, the Court concludes that Plaintiff's failure to question the VE regarding conflicts between his testimony and the language requirements under the *Dictionary of Occupational Titles* at the hearing does not result in a waiver of the issue.

### 2.   Plaintiff's illiteracy

Plaintiff contends the ALJ also erred at step five of the sequential evaluation by failing to make any determination as to the effect her illiteracy has on his ability to work in the national economy, particularly with the jobs identified by the vocational expert. (Doc. 18 at 5-12)  Plaintiff observes that,

based upon the testimony of the vocational expert, the ALJ concluded she was capable of small products assembler I and final inspector, which require a "Language Level 1" and "Language Level 2 under the *Dictionary of Occupational Titles*. (*Id.* at 7)

Language Level 1 is the lowest language level contemplated by the *Dictionary of Occupational Titles*. *See Obeso v. Colvin*, 2015 WL 10692651 at *16 (E.D. Cal. Jan. 5, 2016); *see also Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) ("basic literacy (defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences) is essential *for every job in the economy*") (emphasis in original). Specifically, under Language Level 1, the following expected of an individual:

> READING: Recognize meaning of 2,500 (two-or three-syllable) words. Read at a rate of 95-120 words per minute. Compare similarities and differences between words and series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

*See, e.g.,* DOT 706.684-022 (small products assembler I). Under Language Level 2, an even greater vocabulary and writing ability is expected of each worker, including:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

*See, e.g.,* DOT 727.687-054 (final inspector).

Because Plaintiff is illiterate—as the ALJ found—Plaintiff contends the vocational expert's testimony that she could perform the jobs identified conflicts with the Language Level 1 and Level 2 requirements under the *Dictionary of Occupational Titles*. (Doc. 18 at 8-9) Illiteracy is defined as "the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The regulations explain that the Social Security Administration "consider[s] someone illiterate if the person cannot read or write a

7

simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* Thus, Plaintiff argues that the ALJ erred by not explaining "how an individual who is 'not able to communicate in English, and is considered in the same way as an individual who is illiterate in English' can perform the reading, writing, and speaking demands of the two identified occupations." (Doc. 18 at 8)

The Ninth Circuit has declined to decide whether an ALJ is required to consider a claimant's language skills, including literacy, at step four of the sequential evaluation. *Pinto v. Massanari*, 249 F.3d 840, 847 n. 5 (9th Cir.2001). However, in *Pinto*, the Ninth Circuit explained:

> The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision. These are all factors that Social Security Ruling No. 96–8P requires an ALJ to consider when determining whether a claimant has the residual functional capacity to perform past relevant work. **Here the ALJ, although noting Pinto's limitation in both his findings of fact and hypothetical to the vocational expert, failed to explain how this limitation related to his finding that Pinto could perform her past relevant work as generally performed**.

*Id.* at 846–847 (emphasis added).

The ALJ asked the VE to consider "a hypothetical individual" who had "no formal education," spoke Spanish only, and had "the past work experience of the claimant." (Doc. 9-3 at 65) Thus, the vocational expert considered Plaintiff's past work as an agricultural produce sorter and harvest worker—both of which required a Language Level 1 skill—when concluding Plaintiff was able to perform work as a courier, cashier, and counter clerk. (*See id.; see also* DOT 529.687-186 [agricultural produce sorter] and DOT 403.687-018 [harvest worker]). However, the vocational expert did not explain whether the positions of small product assembler and final inspector could also be performed by someone who was illiterate, similar to Plaintiff's past relevant work. Indeed, the ALJ did not ask the vocational expert any questions regarding the language level requirements of these positions.

Previously, this Court has determined an ALJ cannot rely upon the testimony of a vocational expert when there is no explanation of how a claimant's illiteracy affects the ability to perform work identified by the expert. *See, e.g., Singmuongthong v. Astrue*, 2010 WL 3715152 (E.D. Cal. 2010);

*Her v. Astrue*, 2010 WL 328841 (E.D. Cal. 2010). For example, in *Singmuongthong*, the evidence established that the claimant was illiterate, though her past work required Language Level 1. *Id.* 2010 WL 328841 at *7. The ALJ asked the vocational expert to consider the plaintiff's language levels, but failed to explain the deviation from the *Dictionary of Occupational Titles* in finding that the claimant was able to perform work requiring Language Level 1. *Id.* Therefore, the matter was remanded for further proceedings. *Id.*

Similarly, in *Her v. Astrue*, the ALJ asked the vocational expert to consider the claimant's language when determining the ability to perform past work. *Id.*, 2010 WL 328841 at *6. Although the claimant's past work required Language Level 1, the vocational expert affirmed the availability of past work, without any discussion concerning the deviation. *Id.* at *5-6. As Defendant does here, it was argued that the claimant's alleged language limitations were irrelevant because the claimant performed her past work despite her illiteracy. *Id.* at *6. The Court explained that "[s]uch a statement is not persuasive evidence to support a deviation from a DOT requirement. Although a claimant is not per se disabled if he or she is illiterate, the ALJ must definitively explain why he or she deviates from the DOT's language requirements when finding that a claimant can perform her past relevant work." *Id.* at *6. (citations and quotations omitted).

As in both *Singmuongthong* and *Her*, the record fails to establish that Plaintiff would be able to perform the work identified by the vocational expert given her illiteracy. The ALJ failed to ask the vocational expert whether his testimony conflicted with the *Dictionary of Occupational Titles* after his testimony[3], and the vocational expert did not explain how a deviation from the language levels identified for the small product assembler and final inspector positions was appropriate. Consequently, the testimony of the vocational expert has no evidentiary value for the ALJ's conclusion that Plaintiff is able to perform work in the national economy.

///

---

[3] Here, before the VE testified, the ALJ asked him to "keep in mind and advise [the ALJ] of those points in [the] testimony that… differ and converge from the Dictionary of Occupational Titles," how the expert deviated, and his reasoning for doing so. (Doc. 9-3 at 64) However, after the vocational expert testified, the ALJ did not make any inquiry as to the language requirements of the small product assembler and final inspector positions. Significantly, an ALJ "cannot simply rely on the VE's testimony that no such conflicts exist." *Guido v. Colvin,* 2016 WL 6781152 at * 4 (C.D. Cal Nov. 15, 2016) (quoting *Marquez v. Astrue*, 2012 WL 3011779, at *2-3 (D. Ariz. July 23, 2012)).

**C.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to resolve a conflict between the vocational expert's testimony and the language levels required under the *Dictionary of Occupational Titles*. Based upon the record, the Court is unable to determine whether Plaintiff is able to perform work existing in significant numbers in the national economy. Accordingly, a remand for further proceedings is appropriate in this matter. *See Zavalin,* 778 F.3d at 848 (an ALJ's failure to reconcile apparent conflict was not harmless where the Court "cannot determine [from the record] whether substantial evidence supports the ALJ's step-five finding"); *see also Dieugenio v. Astrue*, 2010 WL 317269 at *3 (C.D. Cal. Jan. 19, 2010) (failure to address a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* warranted remand for further proceedings).

**CONCLUSION AND ORDER**

Because the ALJ failed to apply the correct legal standards, the testimony of the vocational expert cannot be substantial evidence to support the conclusion that Plaintiff is able to perform work in the national economy. *See Zavalin*, 778. F.3d at 846; *Rawlings v. Astrue*, 318 Fed. Appx. 593, 595 (2009) ("Only after determining whether the vocational expert has deviated from the *Dictionary of Occupational Titles* and whether any deviation is reasonable can an ALJ properly rely on the vocational

expert's testimony as substantial evidence to support a disability determination.")  Consequently, the ALJ's decision cannot be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.

Accordingly, the Court **ORDERS**:

1. The Commissioner's motion for summary judgment is **DENIED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Maria Cisneros-Bello and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 15, 2017**               **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE